2012-5125. Mr. Black. Good morning. May it please the court, this case is about a man about a past performance evaluation that was arbitrary in two ways. With regard to MLS, the record lacks sufficient evidence for the evaluators to draw a rational conclusion about the relevancy of MLS's past performance. With regard to GDMA, the evaluation that the evaluators reached ran counter to the evidence that was before the agency. I don't like the fact that they got a less than satisfactory when none of their past performance ratings were less than satisfactory. It seems strange, doesn't it? It does. There seems to be a disconnect, a lack of a rational connection between that overall less than satisfactory rating and the consensus satisfactory and above that was in the questionnaires that were before them. But when they look at the overall record and they see that there are a number of instances where there are security issues, can't they put those together and say, hey, this is really important to us? The short answer is no, not when the record before them places them in an overall context. They're evaluating the customer satisfaction that they're likely to expect. When you look at the definitions, they all refer to what kind of customer satisfaction can we expect. In the less than satisfactory, they found there was an expectation of marginal customer satisfaction. Well, when they look at the actual customers, sure there were issues. These are complex contracts. But overall, these customers were satisfied and many of them thought that GDMA's overall performance was better and outstanding. And only one of the issues related to force protection, most of the issues had to deal with contract administration issues that were listed in the questionnaires. And so that's the fundamental disconnect here. And this record is interesting because you can actually pinpoint where the evaluators went awry. But you realize that there would have been adequate record support for a satisfactory rating because the most relevant contract, or at least the one they determined most relevant, said satisfactory and had a whole slew of negative comments, which is why they ended up saying it was actually less than satisfactory because they thought the negative comments really should have resulted in a lower rating. But in any event, if they had done satisfactory, there would clearly be substantial evidence in this record for that. And if they had said satisfactory, given that the solicitation, the technical approach and past performance would be significantly more important than price, and you're talking about less than a million dollar price differential, they would have been perfectly within their rights to award the contract to the other person. Because if the other person got better and you all would have had satisfactory, your price would have been better. But they all said price was the least important factor because, for goodness sakes, I mean, what is this a contract for? Something really important where price is not quite as important as actually being able to perform and get it right. So given that, I mean, I guess what I'm worried about is that you're complaining about a harmless error. Right, you're worried about prejudice. Right, no prejudice. You should have gotten a satisfactory rating, and maybe even I'd agree with you, but at the end of the day, the same results, so what's the point? Well, here's why. The price gap, although the evaluated price was about a million dollar difference, MLS was 64% higher. Very significant. In the way the price evaluation was done, it was sort of a hypothetical task order. This contract is worth hundreds of millions of dollars. But the evaluated price, 64% price delta. Wait, that doesn't make sense for me. Because if it's hundreds of millions of dollars of contract, and it's a $987,000 difference, roughly, right? That's about right. And so less than a million doesn't seem to me to be 64% of hundreds of millions. No, 64% would stick with the evaluation. That's what the court needs to do. That's what I need to do. 64% higher price. The government decided that price premium, it was worth paying because MLS's price was significantly higher, and the SSA was relying on those evaluations. What this court does not know is if you narrow the gap. Let's just say we win one of the two past performance evaluations, and that gap is narrow. Would the Navy decide it was still worth 64% price premium to select MLS? And there is a substantial chance that they would not, and that is the prejudice standard. And if you look at the case, it's a court of federal claims decision. It's called Bay First. And that is an example where the lower priced offeror protested, and the higher priced, higher rated offeror won the award. The court found that the evaluations were unreasonable, and the ruling on prejudice was that the gap in the technical ratings could have been narrowed. And so therefore, it's possible that the government would have found the lower priced proposal to be the better value, given that they now understand there's a narrower gap between the two. Now, what happens here? If we were to agree with everything you just said, then we would vacate and remand, and what happens? They go back and figure out, would it have mattered if you got a satisfactory and not a less than satisfactory? And they can't go back and redo it, right? The contract has moved on. I mean, I guess I'm trying to figure out what actually happens. If I vacate and remand, what do my vacating and remanding have done? We would go back to the court of federal claims, and we have a request for an injunction that they enjoin continued performance of this contract. You would essentially be ruling that we satisfied one of the four elements of an injunction, that we succeeded on the merits. No, but I would not be ruling that you succeeded on the merits of establishing that you would have gotten the contract, but you just created a question about which the government then could decide whether or not you were still in the running. And I got to think, now that this horse has left the gate, they're not going to say, oh, yeah, well, if you got satisfactory, boy, we would have gone with you instead of the other people. I feel like this is a pointless endeavor, I guess. It absolutely is not. This is how post-award bid protests come to the court of federal claims. They've made a contract award. We go. We're not asking that the contract be awarded to us. That's not our relief. We're asking that the performance of this contract be stopped and that the Navy make a new award consistent with law and regulation. That may be us. It may be not. We have to prove we have a substantial chance of winning it. And we have because of the narrow gap. The MLS may no longer be viewed as worth a 64% higher price. So it's very clear. We're not asking the court of federal claims or you to find that we would be awarded the contract, only that it was arbitrarily and capriciously awarded. So therefore, this contract can no longer be performed because it was improperly awarded, and the Navy has to go back and do the process fairly and legally. This is one of these off-the-record questions, except there is no off-the-record thing here because you are being recorded. But my off-the-record question is, does the government know they wanted to go with the other people from the very beginning? Because I have a sense sometimes they know who they want before they ever even issue the solicitation, and that everybody who is applying, a lot of those people might just be wasting their time. Maybe it's because of a past relationship. Maybe it's because of special expertise, whatever. But when you advertise a contract, sometimes you already know who you want to fulfill it. And is this one of those kinds of cases, or was this a true competitive contract in your mind? What do you think? You're asking me to speculate. I will accept the invitation to speculate. This was an RFP where there were four different contracts being awarded for four different reasons. There were two of you competing for this one. Right. Glenn Defense, we won the other three contracts that were awarded. And it could be that the Navy felt they didn't want one contractor to win all four. Now, I'm speculating on that. Ultimately, this court needs to look at the record, and what the record reflects is a very strained decision, a very strained past performance evaluation, given they had satisfactory, better, better, outstanding, outstanding. And they end up reaching a conclusion that we have less than satisfactory. And the point about the comments, the negative comments. The comments that were submitted along with those ratings, they were not favorable to you, were they? No, they weren't. And here's the question. So there is evidence in the record by which the government could have relied on as to why you did not receive the contract. It's not just that they don't like you or they were somewhat prejudicial to you. There's evidence in the record that had strikes against you. Sure, and that's why I'm not here arguing we should have gotten outstanding. But the rating they assigned needs to be rationally connected to the evidence in front of them. And this is a case where this court has de novo review to apply the APA standard of review itself. But it doesn't seem to me very strained that the reviewing officer looks at those ratings and says, hang on a minute. Look at the problems they've had. This doesn't justify a satisfactory. It doesn't seem like he's straining to do it. It seems like he's upset. Sure, I understand. But the question is, is he free to sort of find those facts himself? This is a past performance evaluation team that's supposed to take a pool of information, of data. And they are supposed to reach a decision that's connected to that data. But he doesn't find it himself. He sends it back to them and they look at it again. Isn't that right? I'm actually talking about the past performance, the team itself, the evaluators. They did take a second look at it and they placed undue emphasis on these comments. Here's the thing about those comments. Are they molehills or are they mountains? The customers identified them and said they're molehills. Overall, we're satisfied or better with GDMA's performance. The evaluators, when the contract review board occurred and said, you know, there's a lot of issues here and MLS has fewer. Please adjust your ratings. There's an email in the record at page A914 where they say, you know, it might be easier for us just to lower the rating and base it on these comments. That's where they lost that rational connection. APA reviews, these are a rational connection. They took those molehills and they made them mountains, even though the customer that provided the input said overall these were not major issues. And that's where this, for APA purposes, that's where the evaluation went off the rails. Those comments and the determination with respect to those comments, those are factual findings, correct? Yes. So that we don't have a de novo review? Well, the, all right, I may not have understood your question. I mean, the review is, was the rationale and the conclusion and the explanation provided by the agency, does it have a rational basis? Does that conclusion and rationale, is it rationally connected? Is it consistent with the evidence that was before them? And it wasn't. And you have de novo review over that to compare the conclusion the evaluators reach and the rationale. If it runs contrary to the evidence before them. But as to the weighing of the facts that the board did, that the agency undertook. That's de novo review also because you need to look at the evidence that was in front of them. You still have to evaluate, does that weighing have a rational basis? I'd like to spend a little time on the MLS evaluation. I guess let me ask you one more question. It seems like you're asking us almost for a rule of law that says if the customers were satisfied, it would always be irrational for the agency not to be satisfied. Yes, I am not. That's kind of a broad sweeping thing. Because I can see a universe in which all the customers could be satisfied. But when the agency looks at it, they say, this isn't that satisfactory across the board. They look at everything and all the comments. Because they're rating what they think in terms of your past performance. They're not just rating, would this customer use him again? Sure, right. They're rating overall. I'm not asking for a rule of law. These APA cases are very fact specific. It's on this record. The conclusion they reach runs counter to the evidence that's in front of them. They could have called these people up, requested additional information, sought a bit more detail about the nature of the concerns. Fleshed out these questionnaires more than they were. But on this record, this is a fact specific case because it's APA. The conclusion they reach, less than satisfactory, simply it does not jive with the information they had in front of them. One housekeeping question, Mr. Buck. Did you say 914? Yeah, there's the email traffic from A914 to 916. Okay, I'll catch. Okay. And it's in our brief. We reference when we describe the involvement of the CRB. You won't talk about on this record whether it's supported or not, but if you look at like A613. Now, A613 is, I think this is the evaluation of the contract the government decided was most relevant. You can check and see if I'm right about that. Okay. Yes, and there are actually two questionnaires for that contract, the one immediately before it. Okay. Which GDMA received a better rating. So just there are two questionnaires for that highly relevant contract that need to be considered. I don't understand. Why are there two questionnaires? Is it two different? One was a contracting officer. The other one was a contracting specialist, but they were both involved in overseeing GDMA's performance. Okay. Well, I mean, if you look at the one on 613, it seems to me that this would be substantial evidence that would support a less than satisfactory overall determination. You've got four less than satisfactories, four satisfactories, and one better. I mean, that seems to me that it means you're hinging in that netherland between satisfactory and less than satisfactory, which means the government is clearly within its rights to decide ultimately less than satisfactory. Yes, but this isn't the only data point. They have to blend these five references and weigh them reasonably and rationally, and you notice the overall rating on this one was satisfactory, and then for the exact same contract, the overall rating was better with some compliments about GDMA's capability to perform in remote locations. The staff of GDMA is knowledgeable and has experience, and so this is where a less than satisfactory was just not a final outcome that was supported by the record they had in front of them. Well, I think we'd better hear from the government and ask them some questions about these same things. Okay. We'll restore your rebuttal time. Okay. Thank you. Ms. Croner? Yes. Are you representing the government or are you? I'm representing the Navy, the United States. Yes. And I'll add two minutes of my time to the intervener's council. So wait, so you're going to give him two minutes, which means you're going to take 13 and he's getting two. Correct. Sheet. Sheet. Ah, I thought the person sitting at the table. My bad. All right. Okay. So go ahead. If you don't mind, could you start where we left off? Sure. Because I'd like to know how you take these evaluations, especially the ones on 611 and 613, and morph these into a less than satisfactory. Absolutely. I'll start with 611 and 613, but I just want to say that the ultimate decision that this court is reviewing is the final decision of the contracting officer at pages 1675 to 1679. But I will start where you asked me to. The questionnaires are the beginning of the process. Each of the offerors was required to identify relevant contracts and to list references. Let me ask a preparatory question. Is the past performance evaluation, i.e., the less than satisfactory, based on something other than these questionnaires? Because I understood these questionnaires to be the only thing in front of the decision maker when he was assessing, well, the group of people who were assessing the rating that they should get. Yes, there was more involved. This is the beginning of the process, but it's not the whole process. That's why I directed the court's attention to the best value tradeoff analysis, which is at page A, 1675 to 1679, that took into account a lot more information. But I think the court is correct in starting at the beginning and working to the end. The beginning of the process is that each offeror provided a matrix of relevant contracts and identified references. If you start with A611 and 612, you'll see that the lead contract specialist, whose name is redacted but who is the person who filled out this form at A611, 612, she was identified by GDMA as a reference. And she rated GDMA better. That was the overall rating at the top of the form. But if you look at her additional comments, for instance, the middle comment, it says, their prices for the non-contracts are rather high and attempt to negotiate the cost seemed pointless. So even though she gave them a better rating, and that's the label on this form, she had concerns about how they dealt with non-priced items. Yeah, so what? She didn't even just rate them better. She gave them overall a better if she had to pick just one. But you look at all the little Xs in the little boxes, and quite frankly, they're a better plus. I mean, you average out the outstandings and the betters, and they're hinging on the line between better and outstanding. I give you that. Yeah, and the high price might be the reason she didn't go with outstanding rather than better, but she ultimately gave them better with a lot of outstanding Xs. That is the label she gave, and that is, as I said, the beginning of the process. Now, what the Navy did is they contacted the branch chief. So if you look at A613 to 614, this is the questionnaire that the branch chief filled out. And he was contacted by the Navy and the Navy's due diligence. He wasn't somebody who was listed by GDMA. And what I think you need to understand is that GDMA was the incumbent contractor at the time, so the Navy had a lot of experience with it. And he is the one who rated, for the same contract, he rated GDMA satisfactory. But he gave GDMA three less than satisfactory individual ratings. And it was his comments, additional comments. Actually, isn't it four? Oh, four, yes, correct. You're correct. But it was his additional comments that opened the door to this investigation, because the PPET initially rated GDMA satisfactory, and the contracting officer sent a draft business clearance memorandum to the contract review board, which proposed that GDMA and MLS would be the two offerors in the competitive range. And the contracting review board reviewed the proposal and said, hold it. You need to look at this again. You need to reconcile this rating of satisfactory because of these additional comments. And it's very clear that the contracting review board didn't change the rating. They sent it back to the PPET and said, on the face of these questionnaires, we have questions. You need to either explain why, despite all of these comments, you believe GDMA is worth rating satisfactory. They went back to the branch chief. No, they went back to the PPET, the past performance evaluation team. But that team doesn't have any information except this sheet of paper in front of them, correct? No, they had additional information, and I can direct you to page 548 in the record. 548 is a summary of the collected test performance information. And this was all the information that was available to the PPET. And as you can see, it's primarily the questionnaire responses, but it was more than that. Well, what else? Show me something more than the questionnaire responses. Well, on GDMA, it appears to be just the questionnaire responses. Yeah, that's what I thought, too. But they looked at other things for other offerors. Well, but we're not talking about other offerors. We're talking about whether it was fair for you to look at questionnaire responses, none of which rate GDMA less than satisfactory, and nonetheless conclude that a less than satisfactory rating is appropriate. But if you look, the overall rating is listed on this chart. In the plaintiff's reply brief, they say that the CRB was not aware of the overall ratings. And this chart indicates that the overall rating is listed as a column to the second from the right. And the past performance evaluation team summary report, if you look at page A530, cross-references this chart. You're pointing me here, pointing me there, putting me over here, but none of them answered my question, which was how do you justify, what is the evidence in the record to justify a less than satisfactory rating when they receive an outstanding rating, a better rating, an outstanding rating, a better rating, and one satisfactory rating out of the five ratings? That was all that they had before them. What I'm getting out of you is ultimately there were no private conversations. There was no other data that was taken into account other than the exact documents I have in front of me. And I'm having a lot of trouble reaching the conclusion that the agency's decision was rational to rate them less than satisfactory. Because this was the beginning of the process, not the end of the process. What the agency did is in the initial business clearance memorandum, it rated GDMA less than satisfactory. But then it sent questions, discussion questions to GDMA and asked GDMA to clear up all these substantial allegations of problems with its past performance. And GDMA did respond to the discussion questions. And when the PPET evaluated the response and then went back to the branch chief to discuss their responses, the PPET concluded that all of these issues about its past performance were not cleared up. And seven out of the eight issues that were identified remained. And so it was on the basis of not just the initial report but the final report that the contracting officer decided that there was material difference between the past performance of GDMA and MLS. Okay. Well, you're talking about the seven or eight issues. I assume that we're talking about the same issues, the ones listed in the additional comments on page 613. Is that right? Yes. Okay. So this particular branch chief had in his mind all of these issues when he came up with his rating, right? Yes. So these were not issues that came up after he did his rating. These were things that he had clearly in his mind when he gave them the satisfactory rating. And he never, as far as I can tell, wrote in to you even after you all sought more information from him. He never said, oh, you're right, I changed the rating to less than satisfactory. He stood by at all times in this record the satisfactory rating. Is that correct? That is correct. So he gave them a satisfactory rating. Everyone else gave them better or outstanding. He was never willing, despite being fully aware of these problems and raising them to you, to deviate from his satisfactory rating. How do you justify deviating from that rating and going below it? Because your focus is on a label, not on the substantive analysis. And what the contracting officer focused on was the substantive difference between the past performance of the two offerors. And if you look at the contracting officer's tradeoff analysis, which is starting at page 1675 through 1679, there's a very thorough explanation of why he determined it was worth spending an extra million dollars. Because this was a contract that had both priced and non-priced items. And the difficulty that the- Well, but wait, wait, wait. Yes, this section absolutely justifies why he thinks it's the best value to not go with GDMA, to go with MLS? MLS, yes. But it's because he is accepting, as a starting point, GDMA's past performance was rated less than satisfactory. Look right on top of 1676. There's a significant difference between GDMA and MLS for past performance. GDMA's past performance was less than satisfactory, whereas MLS's past performance was rated as better. And then he goes through and explains why, given this huge gap between the past performance, because they had identical technical approach criteria ratings, right? They had identical ratings, not identical- But he doesn't seem to base it. That's correct. It's a wash, as far as he's concerned, in this opinion on the technical part. So his entire reason for, I'm going to go with the more expensive contract, is the large gap in past performance. But he doesn't justify, as far as I can tell, the less than satisfactory rating. He accepts it. Because the rating isn't determinative. Ultimately, GDMA's argument here is that the only thing that matters are the labels. And our position is that the agency's evaluation is what's determinative. But how do we know that if GDMA had a satisfactory rating and MLS had a better rating, how do we know that he still would have said, let's go with the more expensive contract? Well, we know that GDMA had a less than satisfactory rating on the other regions, Region 2 and 3. If you look at A638, they were awarded the contract in Region 2 and 3 with a less than satisfactory rating. So, obviously, it's not the label that determines it. It's the tradeoff analysis that has to be rational. And the plaintiff hasn't shown that the tradeoff analysis was irrational here. The agency found a material difference, regardless what label you put on this, a material difference in the past performance of the two offerors, that the agency determined was justified paying the additional money, given the important military needs here, that the agency needed the flexibility to deal with the contractor where they had a reliability on the pricing. What they found when they sent the discussion questions to GDMA and they asked them, for instance, how come they hadn't provided a pricing plan that was required under the contract, GDMA responded, well, the government waived it, it's too late, it's not material to do it now. And, you know, it might be true that the government waived it, but the government was reasonable in determining that on a going forward basis, they needed to deal with a contractor who would have better past performance than they had experienced with GDMA in the past. And so taking all of those factors into account, the agency was reasonable in determining that the past performance, the better past performance of MLS was worth the additional cost here. Do you have a final thought? My final thought is that the MLS determination of relevance is part of the past performance analysis and needs not be evaluated on its own, but as part of the total past performance evaluation. Thank you. We'll hear from Ms. Graves now. Two minutes is going to go very fast, Ms. Graves. May it please the Court. My name is Sarah Graves. I represent the awardee MLS. In our position, Your Honor, this case presents a classic example of a rational best value determination. The thrust of GDMA's argument as it relates to MLS's past performance rating is that it was an abuse of discretion for the agency to determine that MLS's subcontractor performance, excuse me, contract references were highly relevant. But the record shows that it was completely within the agency's discretion to adjust an offeror's overall past performance rating to account for the submission of non-relevant reference contracts. The Navy decided that the reference contracts that MLS's subcontractors had submitted were highly relevant because they were similar in scope, magnitude, and complexity to the contract contemplated under the RFP. They were similar because they were providing husbanding services to the same ports as the RFP covered. They were providing services to vessels of various sizes as was anticipated under the Region I contract. They were providing services on short notice and with a lot of schedule changes as was anticipated that the Region I contract would require. And as a result, it was not arbitrary and capricious for the agency to determine that those contracts were highly relevant. It was within their discretion, and their discretion was reasonably exercised as to the relevancy determination. And if the panel has no further questions, that concludes my comments. Thank you. Mr. Black? Two minutes. Mr. Black, I asked you during your argument in chief whether there were multiple force protection issues, and you told me there was just one. I think we were talking apples and oranges. There was one letter, but in looking at the record, it looks to me like there were two different port visits by two different ships, and the letter complained about two different incidents. Am I correct about that? I'm looking at A613 in the additional comment. Yes, I thought those ships, Ray, I read that they came at the same time. It says port visits, and that's why I read it that way. Okay. Well, I'm going to say the document speaks for itself because my time is short, and I had read it that they were, let's see. It's item two under. Yeah, item two. It had the same date. It said port visits on 6 July 2010. Okay. Okay. Okay. Regarding MLS, because I did want to address MLS, what we heard from Ms. Graves was citing some information that appears nowhere in the contemporaneous record. It's in the statement by the Navy's attorney that was submitted to GAO, and we covered this in our brief, but when you look at the questionnaires about MLS, there's no information about the magnitude or complexity regarding the subcontractor's past performance, and what the court had to resort to was the Navy attorney's description of those in his GAO brief. And what's interesting is what this court could probably help provide some clarity on is what is the role of the agency report? It goes into the administrative record under 31 U.S.C. 3556, but not all of it is contemporaneous information. You don't want the attorney's statement to be part of the record. Yes, and that's even more clear under the APA. The Supreme Court has said many times that the characterization statements rationale provided by attorneys after the fact can't supply the rational basis for the attorney. So I think what we have here is MLS's relevancy determination has no information to support it. Can you take another look, because I think that July 6th date refers to the letter, not to the port visits, and let us know if I'm wrong about that. Okay. Okay. I still submit that the information has to be read in the context of the way that... I understand that. Okay. It was still a molehill, not a mountain. And then... Final thought? Your time is up. Yes, my time is up. So we ask you to reverse and remand for consideration of our injunctive relief. Thank you. Thank you.